611 So.2d 942 (1992)
Michael RODGERS
v.
PASCAGOULA PUBLIC SCHOOL DISTRICT.
No. 89-CA-0800.
Supreme Court of Mississippi.
December 31, 1992.
*943 Jim Davis Hull, Moss Point, for appellant.
Raymond L. Brown, Brown & Watt, Julie L. Pottenger, Pascagoula, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
Following his May 11, 1987, collision with a school bus, Michael Rodgers filed this cause of action against the Pascagoula Public School District. Pascagoula Public School District entered a Confession Of Liability admitting liability for the accident sued upon but denying liability to Rodgers for any injuries. The jury trial was limited to the issue of damages only. The jury returned a judgment in favor of Rodgers in the amount of $11,765.50. Rodgers appeals to this Court requesting an additur. We grant his request and accordingly direct a new trial on damages unless Pascagoula Public School District accepts an additur of $11,765.50.

I.
On May 10, 1987, Michael Rodgers graduated from Alcorn University with a degree in business administration. Around 2:45 p.m. on May 11, 1987, Rodgers and his sister, Gloria Rodgers, were riding in an automobile on Tucker Street in Pascagoula, Mississippi. Gloria Rodgers was driving the automobile. They arrived at the intersection of Tucker Street and Pascagoula Street and stopped at a stop sign. Gloria Rodgers was waiting to make a right turn onto Pascagoula Street. At that same time, a Pascagoula Public School District school bus, operated by Lillie Raby and travelling at an approximate speed of 5 miles per hour, was making a left turn from Pascagoula Street onto Tucker Street. Raby turned the corner too short and sideswiped the Rodgers automobile.
As a result of the accident, both the automobile and the school bus were damaged. According to an auto body repairman, the Rodgers automobile sustained $4,800.00 worth of cosmetic damage. The left side of the Rodgers car was bent inwardly four inches, and the right side was bent outwardly requiring repair.
Rodgers testified that his body and head were thrown against the right front window of the automobile during the accident. Rodgers was not rendered unconscious. Officer Betty Jo Taylor was called to the scene and completed an accident report. Rodgers then accompanied Gloria Rodgers to the library, to an office, and to another sister's home. Rodgers and Gloria Rodgers then sought help at the emergency room of Singing River Hospital.
At the emergency room, Rodgers was given a physical exam and x-rays. The emergency room physician, Dr. Martin Bydalek, did not find any visible signs of trauma or any indication of a concussion. Emergency room records reveal that Rodgers did have a contusion, or a bruise, on the right side of his head. The doctor gave him pain medication and a head injury instruction sheet. Rodgers was then released with instructions to see his family physician if any symptoms persisted.
Rodgers experienced headaches as well as back and neck pain the following week. He went to see his family physician, Dr. *944 Rueben Morris, on May 18, 1987. Dr. Morris observed a contusion, or bruise, on the right side of Rodgers' head but did not find any evidence of a concussion. Dr. Morris gave Rodgers a prescription for pain medication.
Rodgers complained that the pain medication did not give him any relief. He was referred to Dr. Chris Wiggins, an orthopedic surgeon. Dr. Wiggins diagnosed him as having post-traumatic headaches and an acute lumbar spine sprain. Dr. Wiggins testified that if Rodgers' back problem continued for more than one year, it would be permanent and would amount to a 5% permanent partial disability. Dr. Wiggins prescribed additional pain medication. Rogers said this provided some relief.
Rodgers went to see a neurosurgeon, Dr. John McCloskey, and a neurologist, Dr. Terry Millette, for his headaches. Neither of the specialists found any brain damage. Both specialists concluded that Rodgers had suffered a head injury in the accident and was experiencing a post-traumatic pain syndrome or post-traumatic headaches. Both specialists treated him by administering pain medication, Novocaine, through injections in the head.
Rodgers as well as his mother and father testified that he suffered memory lapses, trouble with his thoughts, insomnia, dizziness, fatigue and irritability. Rodgers visited a neuropsychologist, Dr. Daniel Koch, who administered a battery of psychological tests. The tests showed that Rodgers had the same IQ as when he was tested prior to the accident. Dr. Koch's administration of the Halstead-Reitan test revealed that Rodgers was normal. Dr. Koch referred him to a psychiatrist, Dr. John Cranton.
Dr. Cranton diagnosed Rodgers as suffering from post-concussive syndrome and prescribed the medication Meleril, a "major tranquilizer." Dr. Cranton testified that the Meleril was effective in relieving Rodgers' pain and thus Rodgers sustained a concussion in the accident. Dr. Cranton also testified that Rodgers suffered a 40% "vocational" impairment even though he did not suffer any impairment of memory.
The jury returned a verdict, upon peremptory instruction, in the amount of $11,762.50, the exact amount of Rodgers' medical expenses.

II.
Rodgers argues that the jury award is so inadequate as to be against the weight of the evidence and that the trial court erred in refusing to augment the award via additur. Pascagoula Public School District argues that the jury heard the testimony, weighed the evidence, and rendered a reasonable verdict which should stand on appeal.
This Court's authority to impose an additur is found in Miss. Code Ann. § 11-1-55 (1972), which states:
The supreme court or any other court of record in a case in which the money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
Thus, an additur may be awarded: (1) if the court finds that the jury was influenced by bias, prejudice, or passion or (2) if the damages were contrary to the overwhelming weight of credible evidence. See McIntosh v. Deas, 501 So.2d 367, 369-370 (Miss. 1987).
Rodgers relies on this Court's general line of decisions holding that evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, *945 to be drawn from contrasting the amount of the verdict with the amount of the damages. Pham v. Welter, 542 So.2d 884, 888 (Miss. 1989); Matkins v. Lee, 491 So.2d 866, 868 (Miss. 1986); City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss. 1984); Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 405 (Miss. 1972).
Rodgers argues that he put on proof of damages amounting to $11,762.50 in present medical expenses as well as pain and suffering and permanent impairment totaling 40% of the whole body. The jury awarded Rodgers the exact amount of his medical expenses, $11,762.50. Rodgers asserts that this award is not sufficient because it does not include pain and suffering or the permanent impairment. Thus, claims Rodgers, the meagerness of the award when contrasted with the other actual damages evinces bias, passion and prejudice on the part of the jury.
The scope of appellate review in an additur appeal is limited to determining whether the trial court abused its discretion. State Highway Comm'n v. Warren, 530 So.2d 704, 707 (Miss. 1988). This Court has further noted that the party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom. Miss. Code Ann. § 11-1-55 (Supp. 1990); Odom v. Roberts, 606 So.2d 114 (Miss. 1992); Copeland v. City of Jackson, 548 So.2d 970, 974 (Miss. 1989); Hill v. Dunaway, 487 So.2d 807, 811 (Miss. 1986). Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous. Mississippi State Highway Comm'n v. Antioch Baptist Church, 392 So.2d 512, 514 (Miss. 1981) citing Toyota Motor Co. v. Sanford, 375 So.2d 1036 (Miss. 1979) and Wamble v. Mississippi State Highway Comm'n, 123 So.2d 235 (1960); see also Standard Products, Inc. v. Patterson, 317 So.2d 376 (Miss. 1975). This is because the amount of damages awarded is primarily a question for the jury. South Central Bell Telephone Co. v. Ellis, 491 So.2d 212, 217 (Miss. 1986); Edwards v. Ellis, 478 So.2d 282, 289 (Miss. 1985). Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution. Gibbs v. Banks, 527 So.2d 658, 659 (Miss. 1988).
In Pham, this Court considered entitlement to an additur. In that case, a severely injured automobile driver, whose negligence for the accident was fixed at 60%, proved actual damages in the amount of $28,682.70 and sought additional damages for his pain, suffering and future disability. The evidence was uncontradicted regarding the severity of the driver's injuries and the resulting pain and anguish associated therewith. Nevertheless, the jury awarded the appellant $30,000.00 for his total damages allowing only $1,327.30 for pain and suffering. This verdict was held to be so inadequate by this Court so "as to shock the conscience and indicate bias, prejudice and passion on the part of the jury." The Court held that after reviewing appellant's claim for damages, the jury had wrongfully ignored Pham's evidence regarding his pain, suffering and future disability. 542 So.2d at 889.
We find that the jury's verdict in favor of Rodgers was against the overwhelming weight of the evidence. Rodgers gave testimony about his experience during the collision when his body was thrown against the window of the automobile. According to trial testimony, Rodgers was prescribed pain medication on at least six occasions and was treated by at least seven doctors. While there is dispute as to the extent of injuries that Rogers received, there is no dispute in the record that Rodgers did suffer from some pain, even if only headaches, and that Rogers did experience some type of head injury, even if only a contusion. A jury verdict awarding damages for medical expenses alone is against the overwhelming weight of evidence. Rodgers put on proof that his damages included not only medical expenses but also *946 some pain and suffering. Therefore, we grant the additur as requested by Rodgers.
Accordingly, we direct a new trial on damages unless the Pascagoula Public School District accepts an additur of $11,765.50. See Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992). If the school district accepts the additur within fifteen days of the date of this decision, the judgment will be affirmed for $23,531.00 plus interest from date of judgment. Otherwise, the judgment will be reversed and remanded for a new trial on damages only.
AFFIRMED ON CONDITION OF ACCEPTANCE OF ADDITUR OF $11,765.50 BY APPELLEE WITHIN FIFTEEN (15) DAYS.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, BANKS and ROBERTS, JJ., concur.
McRAE, J., specially concurs with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
McRAE, Justice, specially concurring:
While I concur with the results reached by the majority, I am compelled to question how a jury composed of taxpayers can be expected to render a fair award of damages when operating under the assumption, that they, the taxpayers, would ultimately foot the bill. Miss.R.Evid. 411 prohibits the admission of evidence of whether a party was insured with regard to whether that party acted negligently or wrongfully. As to other matters, admissibility of a party's insurance coverage is within the discretion of the trial judge. Anchor Coatings v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210, 1219 (Miss. 1986). The Pascagoula School District admitted liability, leaving only damages at issue. How can we continue to maintain our position in Westmoreland v. Raper, 511 So.2d 884, 885 (Miss. 1987) which upholds the practice of not allowing the "mention of insurance" in suits against municipalities or any other case because of the presumed prejudice to an insurer when that same insurer can capitalize upon the gross prejudice that a jury of taxpayers will have toward assessing damages for the plaintiff? The jury's award, limiting Rodgers' recovery to his actual damages, reflects that prejudice. Without the benefit of full information, a jury can be expected only to reach the same results a second time. In cases such as this, where the School District's insurer rather than the taxpayers would assume the burden of compensating the injured party, I believe that evidence of liability coverage should be admitted to ensure a fair and adequate award, untainted by any misconceptions that it could lighten the pocketbooks of taxpaying jurors.
I further agree that Rodgers should be compensated for his pain and suffering over and above his actual medical expenses. However, I am disappointed to see this Court thrust into the role of a ninemember super-jury, as we are forced to do when granting an additur or remittitur. We do not see the witnesses or "smell the smoke." We, of course, are not the finders of fact. While we may provide guidelines for the trial court to follow when reviewing motions for additurs and remittiturs, we should be mindful that "[a]dditurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Gibbs v. Banks, 527 So.2d 658, 659 (Miss. 1988). Our role in the granting of additurs should be limited to guidance, not the issuance of ultimatums. If either party refuses to submit to our recommendations, then a new trial is required by art. 3, sec. 31 of the Mississippi Constitution.
Since the case is to be remanded for a new trial, I would remand with this in mind.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.